UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

EDMUND GITTENS,

                Plaintiff,

        -against-

CITY OF NEW YORK, et. al.,

                Defendants.

------------------------------------------------------------------X

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS BY CITY OF NEW YORK**

10 Civ. 8502 (PAC)

**PRELIMINARY STATEMENT**

Defendant City of New York (the "City") hereby respectfully submits its Memorandum of Law in further support of its motion to dismiss. Simply, Rule 20(a), Federal Rules of Civil Procedure, did not in any bar plaintiff from litigating the claims made in his two lawsuits in one action and actually encouraged plaintiff to do so. Further, the operative language in the General Release is not ambiguous. Thus, for the reasons set forth herein, as well as in defendant's moving papers, the City's motion must be granted.

**ARGUMENT**

**POINT I**

**PLAINTIFFS' LAWSUITS COULD HAVE BEEN BROUGHT JOINED PURSUANT TO F.R.C.P. 20(a)**

In defendant City's opening brief, the City argued that plaintiff's complaint must be dismissed as a result of executing a General Release in <u>Edmund Gittens v. City of New York, et. al.</u>, 09 Civ. 9805 (LTS)(KNF)(the "First Lawsuit") that barred him from filing the present lawsuit. (the "Second Lawsuit") The City further argued that the operative language of the

General Release, that plaintiff agreed to, "release and discharge the defendants City of New York and Police Officer Inoa; their successors or assigns; and all past and present officials, employees, representatives and agents of the City of New York or any agency thereof, from any and all claims which were or could have been alleged by me in the aforementioned action, including claims for attorneys' fees, expenses and costs," is broad, but certainly not ambiguous.

Plaintiff essentially makes two arguments in response to the City's motion. First, plaintiff argues that he could not have brought the allegations made herein in the First Lawsuit because Rule 20(a), Federal Rules of Civil Procedure, would have barred such joinder. Plaintiff's contention is meritless. Aside from reciting the language of Rule 20(a)(2), that "persons…may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action," plaintiff fails to provide the applicable law on permissive joinder.

"The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." Bleesdell v. Mobil Oil Co., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989)(citing Mosley v. General Motors Corp., 497 F.2d 1330, 1332, (8th Cir. 1974)). "The requirements of Rule 20 are to be given a liberal interpretation…to enable the court to 'promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" A.I.A. Holdings, S.A. v. Lehman Brothers, Inc., 97 Civ. 4978 (LMM), 1998 U.S. Dist. LEXIS 4175, at *19 (S.D.N.Y. Mar. 27, 1998)(quoting Kovian v. The Fulton County Nat'l Bank and Trust Co., 1990 U.S. Dist. LEXIS 3526 (S.D.N.Y. Mar. 28, 1990)). "Under the Federal Rules generally, 'the impulse is toward the

broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  Wyant v. National Railroad Passenger Corp., 881 F. Supp. 919, 921 (S.D.N.Y. 1995)(quoting Gursky v. Northwestern Mut. Life Ins. Co., 139 F.R.D. 279, 282 (E.D.N.Y. 1991)).  "Rule 20 would permit all 'logically related claims' by or against different parties to be tried in a single proceeding."  Bleesdell, 708 F. Supp. at 1421 (quoting Mosley, 497 F.2d at 1333).

Plaintiff's allegations in the First and Second Lawsuits easily meet the requirements of Rule 20(a), and should have been brought in one lawsuit.  Plaintiff's allegations arise out of the same "series of transactions or occurrences" between the NYPD and himself and there are "questions of law or fact common to all defendants" that existed in the First and Second Lawsuits.  As was set forth in the City's opening brief, the First Lawsuit alleged that the City of New York, as well as Police Officer Juan Inoa, were liable to plaintiff for constitutional violations arising out of plaintiff's arrest of January 26, 2009.  (Ex. A to Zuckerman Decl. of March 2, 2011)  Among plaintiff's claims in the First Lawsuit were allegations of false arrest and that he had been subjected to two illegal strip searches.  (Ex. A to Zuckerman Decl. of March 2, 2011 at ¶¶13, 19)  Plaintiff also alleged therein that the City of New York was liable under a municipal liability theory for the allegedly illegal strip searches.  (Ex. A to Zuckerman Decl. of March 2, 2011 at ¶¶20-23)

The Second Lawsuit alleges various constitutional violations by the City in connection with a purported arrest of plaintiff of April 14, 2009, an arrest which obviously allegedly took place before the First Lawsuit was filed. (Complaint, ¶9)  Among the allegations that plaintiff makes in the Second Lawsuit is that he was falsely arrested and illegally strip

searched.  (Complaint ¶¶23-35)  He further alleges that the City is liable for the illegal strip search under a municipal liability theory.  (Complaint ¶¶23-35, 41-43, 58-65)

Thus, there were clearly a "series of transactions" between plaintiff and the NYPD where he alleges that he was falsely arrested on a number of occasions and subjected to the very same constitutional violations albeit on two different dates, including an alleged illegal strip search policy.  Plaintiff's allegation in both lawsuits that he was subjected to an illegal strip search policy of the City that was carried out by NYPD officers on the two dates of incident by itself satisfies subsection (B) of Rule 20(a)(2).  In fact, separate adjudications could have resulted in conflicting outcomes as to plaintiff's strip search claims.  Finally, the similarity of plaintiff's allegations in both lawsuits clearly would have given rise to common questions of fact or law on a multitude of the claims made, including but not limited to his Fourth Amendment claims.

Plaintiff's argument that plaintiff could not have brought the First and Second Lawsuits in one action under Rule 20(a) is belied by a recent lawsuit brought by plaintiff's counsel in this Court, entitled Williams v. City of New York, 10 Civ. 9594 (CM).  In that case, plaintiff alleges that his constitutional rights, including the right to be free of false arrest, were violated by different NYPD officers on three dates of incident, September 21, 2006, April 13, 2007 and November 20, 2007.  The incidents even occurred in separate counties involving different police officers with varying charges for each of the three arrests.  Yet the three incidents were brought in one action by Jacobs and Hazan.  Defendant requests that the Court take judicial notice of the complaint filed by the law firm of Jacobs and Hazan in Williams, a copy of which is annexed as Exhibit A to the Declaration of Mark D. Zuckerman in further support of the City's Motion to Dismiss, dated April 11, 2011, and filed herewith.

F.R.C.P. 20(a) encourages exactly what the City's General Release was designed to accomplish, namely judicial economy, efficiency and the avoidance of multiple lawsuits where possible.  Clearly, the First and Second Lawsuits could have been brought as one lawsuit, and the terms of the General Release clearly bar the Second Lawsuit.  Rule 20 and the General Release at issue upon the instant motion are entirely consistent.

## POINT II

## THE OPERATIVE LANGUAGE IN THE GENERAL RELEASE IS NOT AMIGUOUS

Second, plaintiff makes the argument that the operative language in the General Release is ambiguous and, therefore, extrinsic evidence should be considered by the Court.  Defendant asserts that the General Release is broad and was intended to avoid situations exactly such as this one, but is clearly not ambiguous.  Since the General Release is not ambiguous, extrinsic evidence is unnecessary, and the Court should rule as a matter of law that the General Release bars plaintiff's present lawsuit.

A contractual term is not ambiguous ''simply because the parties urge different interpretations."  Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 616 (2d Cir. 2001).  "The Court should not find language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning."  Metro Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990).  Rather, the Court is to give the terms of the General Release "their most natural and plain meaning."  Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 88 (2d Cir. 2009).

Plaintiff argues that the operative language in the General Release is ambiguous because it can reasonably be interpreted to mean that plaintiff only intended to release claims

arising out of his arrest of January 26, 2009, and not any other dates of incident.  Plaintiff's strained interpretation must be rejected.  Plaintiff principally relies on Mandal v. City of New York, 02 Civ. 1234 (WHP)(FM), 2008 U.S. Dist. LEXIS 24903 (S.D.N.Y. Mar. 17, 2008), in support of this argument.  However, Magistrate Judge Maas' opinion in Mandal does not support plaintiff's position, and actually is another reason why defendant's motion to dismiss must be granted.

The operative language in the release that Magistrate Judge Maas construed in Mandal was as follows:  The plaintiff in that case released the City "from any and all claims which were or could have been alleged by [him] in the aforementioned action arising out of the events in the Complaint and in the Amended Complaints in said action."  The accompanying Stipulation and Order of Settlement and Dismissal at issue in Mandal stated that plaintiff was releasing the City from all claims "arising out of or related to the arrests alleged in the Complaints and the Amended Complaints."  Id. at *3.  Based on the fact that the Stipulation limited plaintiff's release to the claims arising out of the arrests alleged in plaintiff's initial complaint, Magistrate Judge Maas rejected the City's argument that plaintiff's second complaint was barred.  Id. at *8-9.

Obviously, the consistent operative language in the General Release and Stipulation and Order of Settlement at issue here is not similar to the language construed by Magistrate Judge Maas in Mandal.  However, a comparison of the operative language used here to the operative language at issue in Mandal demonstrates why plaintiff's "ambiguity" argument is fundamentally flawed.  If plaintiff truly intended to limit the General Release that he executed upon the Settlement of the First Lawsuit, he should have included language similar to what the parties used in Mandal, namely that he intended to release the City only to claims arising out of

his arrest of January 26, 2009.  That no such language was added leads to the only reasonable conclusion possible, that there was no intent to limit the General Release plaintiff executed.

Simply, and not surprisingly, in order to avoid situations such as this one, the General Release was drafted broadly.  However, that the language was drafted broadly does not make it ambiguous.  Plaintiff's release of the City from "any and all claims which were or could have been alleged by [him] in the aforementioned action," is clear and unambiguous and was designed to promote economy and finality to litigation by plaintiff against the City and its employees.  The General Release must therefore be enforced as a matter of law and plaintiff's complaint dismissed.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the defendant's moving papers, the City's motion to dismiss must be granted.

Dated:     New York, New York
           April 11, 2011

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the
                      City of New York
                    Attorney for Defendant City of New York
                    100 Church Street, Room 3-211
                    New York, New York 10007
                    (212) 442-8248

                    By:            /s/
                        MARK D. ZUCKERMAN