Index No. 10 CV 8502 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDMUND GITTENS ,

Plaintiff,

-against-

THE CITY OF NEW YORK and POLICE OFFICERS
JOHN DOES 1-2 (names and number of whom are
unknown at present), and other unidentified members of
the New York City Police Department),

Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION PURSUANT TO LOCAL RULE 6.3

*JACOBS & HAZAN, LLP*
*Attorneys for Plaintiff*
*22 Cortlandt Street, 16th Floor*
*New York, N.Y. 10007*

*By: David M. Hazan, Esq.*
*Tel: (212) 419-0363*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT .................................................................................................... 4

POINT I

PLAINTIFF'S COMPLAINT MUST NOT BE
DISMISSED BECAUSE THE "<u>MONELL</u>" CLAIM
AGAINST DEFENDANT CITY OF NEW YORK THAT
WAS PLED IN PLAINTIFF'S FIRST COMPLAINT IS
UNRELATED TO THE <u>MONELL</u> CLAIM PLED
AGAINST THE CITY OF NEW YORK IN
PLAINTIFF'S SECOND COMPLAINT AND THE
ILLEGAL STRIP SEARCH ALLEGED IN THE FIRST
COMPLAINT WAS CAUSED BY A COMPLETELY
DIFFERENT NYPD POLICY THAN THE STRIP
SEARCH ALLGED IN THE SECOND COMPLAINT..........................5

A.      Claim Pled Against City of New York in the First
Lawsuit.................................................................................5

B.      Monell Claim Pled in Second Lawsuit ................................5

C.      The Claims Pled Against the City of New York in
the Second Lawsuit Could Not Have Been Pled as
an Allegation in the First Lawsuit.........................................7

D.      Footnote Number One Of The Court's Order of
Dismissal, dated May 11, 2011 is Factually and
Legally Incorrect.............................................................12

E.      This Court Should Not Rely Upon The Fact That
Pargraph 19 of the First Amended Complaint refers
to "two strip searches" ......................................................13

**Page**

POINT II

      THE COURT MUST CONSIDER EXTRINSIC
      EVIDENCE OF THE INTENT OF THE PARTIES
      WHEN THEY EXECUTED THE RELEASE
      BECAUSE THE LANGUAGE AT ISSUE IN THE
      GENERAL RELEASE IS AMBIGUOUS.................................................. 14

CONCLUSION.............................................................................................................. 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

EDMUND GITTENS,

                                        Plaintiff,

                    -against-                                      10 Civ. 8502 (PAC)

THE CITY OF NEW YORK AND POLICE OFFICERS
JOHN DOES 1-2 (NAMES AND NUMBER OF WHOM
ARE UNKNOWN AT PRESENT, AND OTHER
UNIDENTIFIED MEMBERS OF THE NEW YORK
CITY POLICE DEPARTMENT),

                                        Defendants.
-----------------------------------------------------------------------X

**PLAINTIFF EDMUND GITTENS'
MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR RECONSIDERATION
PURSUANT TO LOCAL RULE 6.3.**

## Preliminary Statement

Plaintiff Edmund Gittens, respectfully moves this Court, pursuant to Rule 6.3 of the Local Rules of the Southern District of New York, for reconsideration of the Court's May 11, 2011 Order granting defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Local Rule 6.3 provides in relevant part: "There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Rule 6.3; Gastelu v. Breslin, 03 CV 1339 (JG), 2005 U.S. Dist. LEXIS 20341 (S.D.N.Y. Sept. 12, 2005) (granting motion for reconsideration after re-analysis of dispositive United States Supreme Court decision).

Plaintiff respectfully requests reconsideration regarding the May 11, 2011 Order and Dismissal, which granted defendant City of New York's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff requests reconsideration because (1) the Court

overlooked the controlling law that requires the Court to base a decision pursuant to Fed. R. Civ. P.12(b)(6) on the allegations contained in the four corners of the Complaint; (2) the Court failed to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Connecticut v. Am. Elec. Power Co., 582 F.3d 309, 320 (2d Cir. 2009); (3) the Court failed to properly distinguish the claims pled by plaintiff against the City of New York in the two Complaints; (4) the Court failed to consider plaintiff's argument that the language contained in the general release at issue is ambiguous and therefore the Court should consider extrinsic evidence when determining the meaning of the General Release; and (5) the Court failed to consider the fact that plaintiff did not plead a proper claim against the City of New York in the First Lawsuit.

The basis for the Court's decision to dismiss the Complaint was largely based upon incorrect assumptions made by the Court about facts not contained within the four corners of the Complaint. Moreover, the Court's decision repeatedly and incorrectly draws inferences in favor of defendant City of New York, the moving party, regarding whether the Monell claim pled in the Second Lawsuit could have been filed as part of the first lawsuit.

Plaintiff also writes to respectfully respectfully advise the Court that the Court's decision in this case will likely have a significant impact on many other cases filed against the City of New York in the Southern and Eastern Districts of New York. By way of background, for many years the Special Federal Litigation Division within the New York City Law Department had taken the position that the language contained in their General Release stating that a plaintiff releases the City from "any and all...claims...which were or could have been alleged in this action" applied only to claims that arose out of the same events as those specifically alleged in the Complaint. In fact, in the past plaintiffs' attorneys have been directly advised by attorneys in the Special Federal Litigation Division that the language contained in the General Release only applies to claims arising from the events alleged in the Complaint. Thus, it was disingenuous for

the City to move to dismiss the instant case by interpreting the words "could have" more broadly than it had in the past.   Shortly after receipt of this Court's Order of Dismissal in this case, dated May 11, 2011, the Special Federal Litigation Division moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the matter of  Richard Fernandez v. City of New York,  10 CV 05933 (SJ)(ALC) in the Eastern District of New York, on the same grounds they moved in the instant case.  The City relies heavily upon Your Honor's decision in the Fernandez case.  Over the years, many plaintiffs' attorneys have relied upon the representations of the City's attorneys regarding the meaning of the language n the General Release at issue in this case.   Thus, the Court's final decision in this case interpreting the meaning of "could have" will have an enormous impact on a significant number of other cases currently pending in the Eastern and Southern Districts of New York.

## STATEMENT OF FACTS

For a complete recitation of the facts of this case, the Court is respectfully referred to Plaintiff's Memorandum of Law in Opposition to Defendant City of New York's Motion to Dismiss, dated March 31, 2011.  In short, on November 25, 2009, plaintiff Edmund Gittens filed an action ("First Lawsuit") against defendant City of New York and two police officers, alleging constitutional violations, including an illegal strip search, arising from his arrest on January 26, 2009 ("First Arrest").   On November 10, 2010, plaintiff filed the present action ("Second Lawsuit"), against the City of New York and unidentified police officers, alleging constitutional violations, including an illegal strip search on April 14, 2009 ("Second Arrest").  On or about March 1, 2011 defendant City of New York moved to dismiss the claims asserted in the Second Lawsuit.  Defendant City of New York argued that the terms of a General Release signed by plaintiff related to the settlement of the First Lawsuit, bar plaintiff from filing the Second Lawsuit.  Plaintiff opposed defendant's motion and filed opposition papers on April 1, 2011.  By

order, dated May 11, 2011 this Court dismissed the Second Complaint.  Plaintiff now moves

pursuant to Local Rule 6.3 and respectfully requests that the Court reconsider its decision.

## ARGUMENT

### POINT I

**PLAINTIFF'S COMPLAINT MUST NOT BE DISMISSED BECAUSE THE "MONELL" CLAIM AGAINST DEFENDANT CITY OF NEW YORK THAT WAS PLED IN PLAINTIFF'S FIRST COMPLAINT IS UNRELATED TO THE MONELL CLAIM PLED AGAINST THE CITY OF NEW YORK IN PLAINTIFF'S SECOND COMPLAINT AND THE ILLEGAL STRIP SEARCH ALLEGED IN THE FIRST COMPLAINT WAS CAUSED BY A COMPLETELY DIFFERENT NYPD POLICY THAN THE STRIP SEARCH ALLEGED IN THE SECOND COMPLAINT.**

This Court based its decision to dismiss plaintiffs' Complaint on an erroneous and wholly

speculative and conclusory finding that the Monell claim pled in the Second Lawsuit could have

been alleged in the First Complaint as an alternative theory to the Monell Claim pled in the First

Lawsuit.  The Court acknowledges in its Order of Dismissal, that the Monell claim pled in the

First Lawsuit is a separate and distinct claim from the Monell claim pled in the Second Lawsuit.

Specifically, the Monell claim against the City of New York pled in the First Lawsuit alleges that

plaintiff's injuries were caused by the City of New York's failure to train and supervise and

discipline the defendant police officers.  Conversely, plaintiff alleges in the Second Lawsuit that

the illegal strip search was caused by an unconstitutional strip search policy that was condoned

by the City of New York.

The two Monell claims make essentially opposite allegations. The Complaint in the First

Lawsuit simply alleges that the officers did not follow City of New York policy when they

unconstitutionally seized plaintiff and that the officers behaved in this illegal manner because the

City of New York did not properly supervise and discipline the defendants for not following

NYPD policies. The Second Lawsuit alleges that the unconstitutional strip search of plaintiff was conducted by the defendant police officers in accordance with an illegal strip search policy that is condoned by the City of New York and the New York City Police Department. Although the two Monell claims make very different and potentially conflicting allegations, the Court concluded, without explaining its basis, that "[t]here is no doubt that Gittens could have brought both Monell claims together in the First Lawsuit" and "based on the factual allegations in the first Complaint, Gittens could have pursued a claim based on either theory of liability." For the reasons set forth below, plaintiff could not have included the Monell claim pled in the Second Lawsuit as a claim in the First Lawsuit.

### A.  Claim Pled Against City of New York in the First Lawsuit

The claim pled against the City of New York in the First Lawsuit alleged that the City of New York was "aware of notices of claim, lawsuits, complaints filed with the City, and from the City's own observations that the individual defendant police officers were unfit officers who have a propensity to commit the underlying constitutional violations against plaintiff." See Compl. annexed to Hazan Decl. at Exhibit "1" at ¶ ¶ 21-22.  Plaintiff alleged that the City of New York failed to take remedial action against the defendant officers and failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and utilized them. Id.   Additionally, plaintiff alleged that the City of New York failed to adequately investigate prior complaints filed against the officers. Id.   Notably missing from plaintiff's First Lawsuit are the words "Monell", "policy", "practice," or "custom." Id.

### B. Monell Claim Pled in Second Lawsuit

The Monell claim pled against defendant City of New York in the Second Complaint alleges that there is a policy, practice or custom within the New York City Police Department, wherein New York City Police Officers illegally strip search individuals without specific, articulable factual basis supporting a reasonable suspicion or probable cause to believe the

- 5 -

individual secreted contraband, evidence, or has a weapon inside a body cavity as required by

Sarnicola v. The County of Westchester, 01 Civ. 6078, 2002 U.S. Dist. LEXIS 20305 at *28-29

(S.D.N.Y. Oct. 23, 2002). See Compl. annexed to Hazan Decl. at Exhibit "2" at ¶ 32. New York

City Police Officers have testified under oath that it is the policy, practice, and custom of the

New York City Police Department to conduct strip searches of every person that is arrested.

United States v. Gonzalez, 08 Cr. 363 (BSJ), 2009 U.S. Dist. LEXIS 59742 at *7 (S.D.N.Y.

March 2, 2009). Id. at ¶ 33. In fact, the Honorable Barbara S. Jones presiding in the Southern

District of New York held that "there is a "[NYPD] departmental policy of strip searching all

arrestees without making any assessment of particularized circumstances.'" Gonzalez, 2009

U.S. Dist. LEXIS 59742 at *20 (S.D.N.Y. March 2, 2009. Id. at ¶ 34. As a result of Defendant

City of New York and the New York City Police Department's deliberate indifference about the

fact that the New York City Police Officers routinely conduct strip searches without reasonable

suspicion and/or probable cause, there is a pattern, policy, custom or practice of New York City

Police Officers strip searching individuals without a factual basis supporting a legal reason to do

so. Id. ¶ 35.

The claim pled in the Second Lawsuit specifically alleges that the individually named

police officer defendants, "engaged in conduct that constituted a custom, usage, practice,

procedure or rule of defendant City of New York, which is forbidden by the Constitution of the

United States." Id. at ¶ 59. Furthermore, in the Second Lawsuit plaintiff alleged that the failure

of defendant City of New York to properly recruit, screen, discipline, and supervise its officers

for engaging in unconstitutional strip searches, further corroborates that the City of New York

permits as a matter of policy, strip searches such as the one complained of in the Second

Lawsuit. Id. ¶ 61. "As a result of the foregoing customs, policies, usages, practices, procedures

and rules of the City of New York and the New York City Police Department, plaintiff was

unlawfully strip searched. Id. at 64.

- 6 -

C. **The Claims Pled Against the City of New York in the Second Lawsuit Could Not Have Been Pled as an Allegation in the First Lawsuit.**

There are clear reasons why plaintiff could not ethically or legally file the <u>Monell</u> claim pled in the Second Lawsuit as an allegation in the First Lawsuit.  The First Lawsuit clearly alleges that plaintiff's rights were violated because the individually named police officer defendants <u>were not following the NYPD's policies and procedures</u> when they seized and searched plaintiff.  Furthermore, the only facts pled in the First Lawsuit that, in any way support a claim against defendant City of New York, are that "the City of New York was aware of notices of claim, lawsuits, complaints filed with the City, and from the City's own observations that the individual defendant police officers were unfit officers who have a propensity to commit the underlying constitutional violations against plaintiff."  There are no allegations made in the First Lawsuit that support an allegation that the officers were following the policies and practices of defendant City of New York and the New York City Police Department when they strip searched plaintiff.  To the contrary, the officers involved in the first incident violated the NYPD's procedures and the officers should have known, based upon those rules, that their decision to strip search plaintiff on that occasion was unconstitutional. The First Lawsuit alleges that the individually named police officer defendants did not follow the NYPD's rules when they violated plaintiff's rights and that the City of New York failed to stop the illegal behavior of the officers  when it ignored complaints that were made about the officers.

In stark contrast with the First Lawsuit, the Second Lawsuit clearly alleges that the individually named police officer defendants <u>were abiding by the policies, procedures and customs</u> of the New York City Police Department when they violated the Fourth Amendment to the United States Constitution and unconstitutionally strip searched plaintiff.

It appears from the Court's decision and Order that it failed to analyze the claims pled in the two Complaints against defendant City of New York and further failed to analyze whether

- 7 -

the Monell claim pled against the City of New York in the Second Lawsuit was compatible with the facts and allegations pled in the First Lawsuit.  Upon examination of the First Lawsuit, the Court will see that it would have been inconsistent, disingenuous and bad lawyering to include the Monell claim that was pled in the Second Lawsuit, in the First Lawsuit.

Additionally, the Court appears to have based its decision to dismiss plaintiff's Complaint on an assumption, not based upon facts, that plaintiff and his attorneys had a good faith basis to allege in the First Lawsuit that the strip searches on January 26, 2009 and April 14, 2009 were both caused by the same policies and practices used by the NYPD.  Specifically, the Court reasoned that counsel for plaintiff should have pled both Monell claims in the First Lawsuit, as alterative theories, even though the two claims directly conflict with each other.  It is unclear from the Court's decision how it reached that conclusion.

Importantly, there are several reasons why plaintiff lacked a good faith basis to include the Monell claim pled in the Second Lawsuit as part of the First Lawsuit and had reason to believe the officers involved in the First Lawsuit did not follow NYPD policy when they strip searched plaintiff.  First, the underlying circumstances leading to the strip search claim pled in the First Lawsuit and the strip search claim pled in the Second Lawsuit are distinguishable.  In the First Lawsuit, plaintiff was arrested for Disorderly Conduct and Resisting Arrest.  See Exhibit "1" annexed to Hazan Decl. at ¶ 10. Subsequently, plaintiff was strip searched by the defendant officers at the police Precinct. Id. at ¶ 13. Plaintiff does not contend that there is generally a problem within the NYPD, wherein individuals arrested for disorderly conduct and resisting arrest are thereafter strip searched.  Upon information and belief, most NYPD officers know that they can not strip search an individual when they have been arrested for those offenses unless the officer has additional reason to believe that the defendant was hiding weapons or contraband under his clothing or inside of a body cavity.  For these reasons, regarding the First Lawsuit, plaintiff alleged that the officers deliberately ignored the law and NYPD policy and

- 8 -

unconstitutionally strip searched him. Further, upon information and belief, the officers that strip searched plaintiff during the First Arrest made comments that indicated to plaintiff that they knew they were breaking NYPD procedures when they strip searched him. Based upon the underlying facts of plaintiff's First Arrest, plaintiff did not have a good faith basis to allege that the police officers acted in accordance with an affirmative unconstitutional policy and practice of the NYPD regarding strip searches.

Plaintiff's Second Lawsuit alleges that he was stopped by officers in an unmarked police vehicle while he was walking down the street. Plaintiff was transported to the 25th precinct and strip searched. Plaintiff was ultimately released from the precinct without being charged with a crime. Plaintiff returned to the precinct after he was released to try to find out why he was seized and strip searched, however officers at the 25th Precinct advised plaintiff that the officers who arrested him were possibly Narcotics officers that were not specifically assigned to that command. Upon information and belief, the unconstitutional strip search policy and practice that is condoned by the City of New York oftentimes involves narcotics officers. The facts and circumstances leading to plaintiff's strip search are consistent with the category of strip searches the NYPD condones. Therefore, based upon the facts known to plaintiff when he filed the Second Lawsuit, it appears likely that he was arrested by narcotics officers and the officers' actions of unconstitutionally strip searching plaintiff were conducted pursuant to an unconstitutional strip search policy, practice, and procedure condoned by the City of New York and NYPD, as cited in plaintiff's Complaint.

The Court's conclusion that both Monell claims could have been alleged together, as part of the First Lawsuit improperly assumes that plaintiff and his attorneys had a factual and good faith legal basis to proceed in that manner. Rather than accepting as true all allegations in the complaint and drawing all reasonable inferences in favor of the non-moving party, namely the plaintiff, the Court concludes, without evidence or factual basis, that plaintiff had a factual basis

- 9 -

to allege in the First Lawsuit that he was strip searched because the officers were complying with an unconstitutional policy, practice and procedure of the NYPD to conduct unconstitutional strip searches. Connecticut v. Am. Elec. Power Co., 582 F.3d 309, 320 (2d Cir. 2009).  In reaching a decision on a 12(b)(6) motion, the Court is not permitted to jump to such a conclusion, unless there are specific facts pled in the Complaint that provide a clear basis for joining the two Monell claims with the First Lawsuit. Here, the Court did not rely upon the facts pled in the Complaint, nor did the Court draw all reasonable inferences in favor of plaintiff, the non-moving party, as mandated by the Second Circuit.  For these reasons, the Court must reconsider its decision to dismiss the Complaint and must only dismiss the Complaint at this juncture if the Complaint contain the appropriate facts to justify dismissal.  If the Court requires additional facts to reach its decision then it should deny defendant's motion to dismiss and allow the parties to proceed with discovery.

Importantly, in the Order of Dismissal, the Court reached its conclusion to dismiss the Complaint without first having a complete factual record. Here, the Court held that plaintiff "could have" included the Monell claim pled in the Second Lawsuit as part of the First Lawsuit. The Court reached this conclusion without knowledge of whether plaintiff had facts in his possession that prevented him ethically or legally from filing the Monell claim from the Second Lawsuit as part of the First Lawsuit.  Instead, the Court based its entire decision on a small number of facts pled in the Notice Pleading Complaint filed in the First Lawsuit.  Although none of the facts pled in the Complaint in the First Lawsuit provide any factual basis for adding the Monell claim from the Second Lawsuit, the Court nevertheless concluded that the Monell claim from the Second Lawsuit could have been filed as part of the First Lawsuit.  Plaintiff strongly disagrees with the Court.  In fact, if the Monell claim from the Second Lawsuit had been added to the First Lawsuit, the claim may have been dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Complaint would not have contained "sufficient factual matter"

- 10 -

to plead the Monell claim so that it is plausible on its face in accordance with the Supreme Court's decisions in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007.

When considering a motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the Court may only look at the four corners of the Complaint to determine whether a plaintiff sufficiently stated a claim. Here, in rendering a decision in a 12(b)(6) motion, the Court made a determination that a Monell claim pled in the Second Lawsuit could have also been included as a claim in the First Lawsuit, even though the allegations in the First Lawsuit contradict the Monell claim from the Second Lawsuit. At this stage of litigation, the Court is unable to render that decision with respect to this issue because the Court could not have known whether there were facts outside of the pleadings that plaintiff and/or his attorney were in possession of that ethically and legally barred them from alleging the Monell claim that was pled in the second Complaint as part of the First Lawsuit. For example, to the extent the police officers involved in the First Arrest acknowledged to plaintiff that they knew they were breaking NYPD protocol when they searched him, plaintiff would have a basis to believe that they were not following NYPD policy and that they were simply rogue officers. Given those statements, it would be unethical and factually baseless for plaintiff to have included the Monell claim from the Second Lawsuit which alleges that plaintiff was unconstitutionally strip searched because the officers were acting in accordance with an NYPD policy to conduct unconstitutional strip searches under certain circumstances. Some discovery is needed before the Court can render a decision about the information known to plaintiff and his attorney at the time the First Lawsuit was filed and whether the two claims against the City could have ethically and legally been filed together as part of the first lawsuit.

The strip search of plaintiff in January, 2009 and in April 2009 was allegedly caused by two very distinct failures by the NYPD, which are not connected in any way. One Complaint alleges that the officers behavior was so egregious that they were not even following the NYPD's policies and the other complaint alleges that the officers were following the unconstitutional policies which are condoned by the NYPD. It is certainly possible for an individual's Constitutional Right not to be strip searched by a police officer without reasonable suspicion or probable cause to be violated on two separate occasions as a result of two separate underlying practices. A plaintiff is not be required to allege all possible theories of <u>Monell</u> liability in one Complaint.

For the reasons set forth above, the Court lacks a legal and factual basis to hold that plaintiff's Second Lawsuit "could have" been filed brought as one lawsuit with the First Lawsuit. The Court's reasoning that even though the lawsuits stem from two completely unrelated incidents the <u>Monell</u> claim pled in the Second lawsuit could have been pled as a claim in the First Lawsuit fails because the Court clearly erred in that conclusion.

For thee reasons, plaintiff respectfully requests that the Court reconsider its decision to dismiss plaintiff's Complaint and allow the parties to proceed with discovery.

### D. <u>Footnote Number One Of The Court's Order of Dismissal, dated May 11, 2011 is Factually and Legally Incorrect.</u>

The Court's conclusion that joining both <u>Monell</u> claims into one lawsuit would have helped plaintiff establish a "pattern and practice" of an illegal strip search policy, as the Court suggests in footnote number one of its Order of Dismissal, dated May 11, 2011 is incorrect. The mere fact that plaintiff was illegally strip searched on multiple occasions would not help establish a claim that the NYPD had an affirmative policy and practice of conducting illegal strip searches. Rather, since the strip search cited in the First Lawsuit was allegedly caused by rogue officers, who were not following the NYPD's policies and practices, the allegations from the

First Lawsuit do not support the <u>Monell</u> claim in the Second Lawsuit, which alleges that the unconstitutional strip searches conducted by the NYPD are conducted pursuant to an affirmative NYPD policy and practice.

### E. **This Court Should Not Rely Upon The Fact That Paragraph 19 of the First Amended Complaint refers to "two strip searches."**

It appears that the Court based its decision, in part, on an allegation contained in paragraph 19 of the First Lawsuit, wherein it referred to "two strip searches." The Court jumps to an incorrect inference that one of the two strip searches mentioned in the text of paragraph 19 of the First Complaint is a reference to the strip search that occurred on April 14, 2009. Once again, in reaching this baseless conclusion, the Court failed to follow the rule that requires the Court deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to draw all reasonable inferences in favor of the non-moving party, plaintiff. <u>Connecticut v. Am. Elec. Power Co.</u>, 582 F.3d 309, 320 (2d Cir. 2009). The Court's decision to draw an inference against plaintiff in this situation is incorrect and is not a proper basis to dismiss plaintiff's Complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.

In deciding a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must only rely upon the facts pled in the Complaint. <u>Id.</u> Plaintiff's First Complaint makes absolutely no reference to his arrest on April 14, 2009 and based upon the pleadings, there is no factual basis to jump to a conclusion that "two strip searches" referenced in the First Complaint has any connection to the strip search that occurred on April 14, 2009. Only plaintiff's counsel knows why the "two strip search" language was mentioned in paragraph 19 of the First Complaint. It may have been a typographical error or it could have been a reference to another strip search that occurred prior to the January 26, 2009 arrest. The point is, we do not know why that phrase was accidentally put in the First Complaint, and it is improper for the Court to speculate. Thus, to the extent the Court based its decision, in any way, on the allegation of "two

strip searches" in paragraph 19 of the First Complaint, this Court must reconsider whether it properly dismissed plaintiff's Complaint.

## POINT II

**THE COURT MUST CONSIDER EXTRINSIC EVIDENCE OF THE INTENT OF THE PARTIES WHEN THEY EXECUTED THE RELEASE BECAUSE THE LANGUAGE AT ISSUE IN THE GENERAL RELEASE IS AMBIGUOUS.**

This Court must find that it requires extrinsic evidence and some discovery before it makes a decision with respect to the meaning of the General Release plaintiff executed as part of the settlement agreement in the First Lawsuit. Plaintiff made these arguments in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated April 1, 2011, but the Court did not address the arguments in its Order of Dismissal.

"A release is a species of contract and 'governed by the principles of contract law.'" Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 514 (2d Cir. 2001) (quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. Gillaizeau, 766 F.2d 709, 715 (2d 1985) (applying New York law)); Zilinskas v. Westinghouse Elec. Corp., 248 A.D.2d 777, 778, 669 N.Y.S.2d 703 (3d Dep't 1998). Although the scope and validity of a release of a federal claim are governed by federal law, a federal court looks to state law to determine the content of that federal law.  Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 5 F.3d 10, 15 (2d Cir. 1993).

Under New York law, the Court must give effect to the intent of the parties to a contract as revealed by the language that they used. Raymon Corp. v. Natil Union Fire Ins. Co., 46 A.D. 3d 1251, 1253, 849 N.Y.S.2d 101 (3d Dep't 2007); Zilinskas, 248 A.D.2d at 779; accord Gross v. Sweet, 49 N.Y.2d 102, 107, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979).  When the contract is a release, the New York cases permit its enforcement only to the extent it contains an "explicit, unequivocal statement of a present promise to release [a party] from liability." Carpenter v.

- 14 -

Machold, 86 A.D.2d 727,727, 447 N.Y.S.2d 46 (3d Dep't 1982); see Golden Pac. Bancorp, 273 F.3d at 515 (applying New York law).

In considering the reach of a particular disputed provision, a court must examine the entire structure of the agreement and attempt to reconcile its various provisions. See Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 358, 794 N.E.2d 667, 763 N.Y.S2d 525 (2003); Laba v. Carey, 29 N.Y.2d 302, 308, 277 N.E.2d 641, 327 N.Y.S.2d 613 (1971). Thus, in this case the "[s]ettlement [a]greement … must be read as a whole," keeping in mind the controversy being settled and the purpose for which the release was given. Berman v. Parco, 986 F. Supp. 195, 210 (S.D.N.Y. 1997) (applying New York law); see Apfel v. Prestia, 41 A.D.3d 520, 521, 838 N.Y.S.2d 605 (2d Dep't 2007); Zilinskas, 248 A.D.2d at 779.

To the extent that the language in the release is subject to two conflicting interpretations, the Court must adopt the narrower of the two possible interpretations of the release. Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 662 (2d Cir. 1994) (applying New York law). Here, plaintiff interpreted the language in the General Release to mean that plaintiff released the City of New York from all claims that were brought or "could have" been brought arising out of the same transaction, occurrence, or controversy. Defendants argue that the language in the release at issue is broader and that it covers all claims that possible "could have" been joined with the lawsuit being settled. When there are two interpretations of language in a General Release, the Second Circuit requires the Court to adopt the narrower interpretation of different possible interpretations of the language in the General Release. Mandal v. City of New York, 2008 U.S. Dist. LEXIS at *8-9, citing Bank of New York, 35 F.3d at 662. Therefore, in this case the narrower interpretation of the General Release is that the clause "which were or could have been alleged in this action" refers to any claims that could have been alleged regarding the arrest at issue in plaintiff's November, 2009 Complaint. Since the allegations in the instant case have no relation whatsoever to the arrest at issue in the case filed in November, 2009, the Court must

- 15 -

deny defendant's motion and permit plaintiff to proceed with the claims alleged in the subject Complaint.

In this case, the language in the General Release is ambiguous about what is meant by "any and all...claims....which were or could have been alleged in this action." As explained supra, it is not always clear, whether a claim that does not arise from the same transaction or occurrence as the claims being settled "could have" been pled jointly, as part of the case being settled.   The instant case is an excellent illustration of why the words "could have" are ambiguous.  Many factors go into a decision regarding whether an attorney "could have" joined the unrelated claim into the settled lawsuit. First, a attorney must consider whether he has enough facts in his possession to properly allege the claim in accordance with the pleadings standard.  Also, as discussed supra, issues can arise about whether an attorney "could have" ethically filed a claim jointly with another lawsuit when joining the claim would detract from the strength of the underlying lawsuit.

In this instance, it is not clear what the parties meant when they entered into the General Release with each other.   Therefore, extrinsic evidence of the intent of the parties when they executed the release is necessary for the Court to consider, and some discovery may need to be conducted.   Wells v. Shearson Lehman/ American Express, 72 N.Y.2d 11, 14-15 (1988). "Ambiguity has readily been found in broad general releases" and the New York State Supreme and Appellate Division cases have readily identified factual questions in the circumstances of a release (Sage v. Hale, 75 Misc. 2d 256), and in a reading of the general release language in the context of the entire document (Spector v. K-Mart, 99 A.D.2d 605).  Plaintiff submits that at the time the General Release was executed, all parties, including counsel for defendant City of New York, understood the language in the General Release to release the defendants only from claims arising from the specific arrest at issue in that case.  Thus, to the extent the Court is unable to find as a matter of law that plaintiff is permitted to bring this action, discovery must be

conducted and extrinsic evidence gathered regarding the parties' understanding of the contested language contained in the General Release.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court reconsider its decision to dismiss the Complaint. Defendant's motion to dismiss should be denied and plaintiff should be permitted to proceed with this action. In the alternative, discovery must be conducted, so that the parties can gather extrinsic evidence regarding the parties' understanding of the language contained in the General Release when it was executed.

Dated:     New York, New York
           May 20, 2011

                                        By:    _____
                                               STUART E. JACOBS
                                               DAVID M. HAZAN
                                               JACOBS & HAZAN, LLP
                                               Attorney for Plaintiff
                                               22 Cortlandt Street, 16th Floor
                                               New York, NY 10007
                                               (212) 419-0363

TO:    Mark Zuckerman, Esq. (Via First Class Mail and ECF)
       New York City Law Department
       100 Church Street, 4th Floor
       New York, New York 10007

CC:    Honorable Paul A. Crotty (Via First Class Mail and ECF)
       United States District Judge, SDNY
       United States District Court
       500 Pearl Street
       New York, New York 10007-1312

- 17 -